THE ALLIANCA.

THE VIGILANCIA.

THE SEGURANCA.

THE ADVANCE.

HUTSON v. PROCEEDS OF THE ALLIANCA et al.

(District Court, S. D. New York. October 12, 1895.)

SURPLUS MONEYS—REPAIR OF DOMESTIC SHIP—HOME PORT—NO STATE LIEN OR EQUITABLE LIEN—EXECUTION NO PREFERENCE OVER PRIOR MORTGAGE ON SHIP.

Repairs being made upon the vessels of the Brazil Company in the home port upon dealings with the company, and no claim of lien having been filed pursuant to the state law, in consequence of the assurance of one of the employés of the company that the bills would be paid, and a judgment in personam being afterwards obtained against the company for the amount of the repairs, and an execution thereon issued to the marshal, under which along with other process the vessels were sold; *Held*, that the execution itself being subject to the priority of the mortgage, and the statutory lien being lost, there was no equitable lien which

could be annexed to the execution so as to give it priority over the mortgage; because the failure to file any notice of lien under the statute, as well as the other evidence, showed an intentional waiver of lien, and a reliance upon the personal credit of the company.

This was a petition by Robert Hutson for payment of a decree in personam against the United States & Brazil Mail Steamship Company out of the proceeds of the Allianca, Vigilancia, Seguranca, and Advance, which vessels were owned by that company.

James McKeen, for petitioner.
Carter & Ledyard and Mr. Baylies, for mortgagee.

BROWN, District Judge.   On the 15th of March, 1893, the petitioner obtained a judgment on a libel in personam in this court against the United States & Brazil Mail Steamship Company for $12,000 and upwards, for work and labor done in the repair and painting of the defendant's steamships above named.   On the following day, March 16th, execution was issued to the marshal of this district, who already had the above vessels, except the Seguranca, in his possession, under process issued on previous libels for seamen's wages.   All the vessels were subsequently sold under the various processes in the marshal's hands (see The Allianca, 63 Fed. 728); and the petitioner now seeks payment of his judgment in personam out of the proceeds deposited in the registry of the court.   There is sufficient to pay the judgment in full, provided the judgment is entitled to a preference in this court over the claim of the mortgagee in trust for the bondholders, amounting to $1,250,000.   The facts in regard to the mortgage claim are briefly stated in the case of The Kate, 63 Fed. 714, 715.

The work and repairs for which the judgment was recovered were done here, in the home port of the vessels, and upon dealings directly with the steamship company, the owner.   The commissioner to whom the matter was referred has found that there were no dealings with the mortgagee or bondholders, upon which alone any priority in equity could be based; and there was no lien under the general maritime law.   The statute of this state gives a lien for such work and supplies; but as no specification of lien was filed, as required by the statute, the petitioner's lien under the state law was lost long before the suit in personam was commenced.

It is contended, however, that inasmuch as a lien was acquired upon the vessels under the law of this state by the issue of the execution to the marshal, the priority over the mortgage that would have been given to the petitioner had a specification of lien been duly filed, should equitably be now attached by the court to the execution lien, by reason of the beneficial nature of the work done in the improvement of the ships for the mortgagee's benefit, and because of the maritime nature of the claim itself, as a necessary repair.

No case in point is cited in support of this contention; and much as I could wish to see the petitioner's claim paid, I cannot find any sufficient basis for a legal or equitable priority over the mortgagee's

demands; and without that, it would be violative of the mortgagee's legal rights to give the petitioner such a preference.

1. On the 16th of March, 1893, when the execution was issued to the marshal, although there was a default in payment of the interest due on January 1, 1892, still the mortgagee in trust had no right to immediate possession, because the mortgage did not give that right until the holders of at least 100 bonds had elected to claim a default in the mortgage; and that election was not made until about a week after the execution had been issued to the marshal. The case of Leadbetter v. Leadbetter, 125 N. Y. 290, 26 N. E. 265, therefore, I do not consider applicable here.

2. It is not contended that the execution merely as such, and independently of any consideration of the character of the original claim, could be given priority over a prior mortgage. The law is clearly to the contrary; and that being so, I do not perceive how the scope of an execution, or its equitable effect as a lien, can be enlarged, so as to create a right of priority which it does not in itself possess, unless there is some other recognizable legal equity which can be tacked to the execution; i. e., some existing, outside, concurrent maritime or equitable right, which the court could recognize as sufficient to confer priority, either upon a suit in rem, or upon a bill in equity. If, for instance, the suit had been commenced in the absence of the ship, and the execution had been issued before the lapse of the 30 days within which the statute requires the specification to be filed, the existing statutory lien, though independent of the execution itself, might be recognized as giving to the execution a right of priority over the mortgage in the distribution of the surplus money; and any subsequent filing of a specification might be held to be unnecessary, as being outside of the purpose of the statute, as in the case of The Niagara, 31 Fed. 163. And so if the supplies were actually furnished upon the credit of the ship, and the intended filing of specifications had been prevented through any fraudulent practices of the owner, or mortgagee, a different question would have been presented. But here the evidence negatives all such conditions. The statements of Mr. Abels, so far as they purported to be statements of fact, were true; and his expressions of confidence that the petitioner might rest easy, and that he would be paid, were undoubtedly honest and sincere.

3. Viewing the petitioner's claim in its broadest aspects, an actual credit of the vessels is an essential prerequisite to any right of priority. The failure, however, to file any specification of lien, in conformity with the state statute, in a case of supplies in the home port, affords a strong presumption, in the absence of any contrary evidence, that there was no actual credit of the ship, nor any view originally to the acquisition of a lien. The testimony taken before the commissioner on that point makes that presumption conclusive. It shows that the omission to file specifications was deliberate; that notwithstanding the fact that the company's indebtedness to the petitioner was increasing, and payments difficult to be obtained, the petitioner, relying upon the repeated assurances of Mr. Abels that he would get his pay, voluntarily chose to omit filing specifications

of lien from time to time, rather than run the risk of offending a customer and losing work. The evidence shows, in other words, that the petitioner voluntarily renounced any credit of the ships, and the lien which the statute proffered him, and chose to trust to the personal responsibility of the company for the sake of future business. However mistaken and unfortunate this course may have been, there is no principle of equitable law that I am aware of, that permits the court to repair such a mistake, where, as I have said above, the creditor's course was not induced by any false or fraudulent practices.

The contention that the maritime and beneficial nature of the original consideration of the debt gives it priority, overlooks and disregards the fundamental condition that there must also be a credit of the ship, either proved, or legally presumed. Where the lien is given by the maritime law itself, as in the case of supplies to the master in a foreign port; or where the state statute gives a lien for supplies in the home port, and the conditions of the statute are complied with, a credit of the ship is legally presumed; and that presumption stands until disproved by controlling evidence to the contrary. But in either of these cases, if the contract of the parties expressly excludes any lien, no claim to a lien or to priority under an execution in personam upon that debt, on the ground of the beneficial nature of the supplies, can be admitted. And so, where, as in this case, there is neither a maritime lien nor any existing statutory lien, affirmative proof of a credit of the ship is essential as a basis for any equitable claim beyond that which the execution in itself confers. The original consideration alone is as insufficient for an equitable claim of priority, as it is insufficient to establish a lien in the home port, independent of the statute. To sustain the petitioner's contention in this case, would be not merely to nullify the intent of the state statute by giving the petitioner the same benefits without compliance with the statute as with it; but in the absence of any maritime or existing statutory lien aside from the execution itself, it would, by necessary implication, create in petitioner's favor a presumed credit of the ship, which the petitioner himself deliberately renounced at the time when the credit was given.

For these reasons the petition must be dismissed.